**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------

GREGORY L. JACKSON,

                              Petitioner,

      v.                                                No. 03-CV-545
                                                           (DNH/DRH)

DANIEL SENKOWSKI, Superintendent; and
ELIOT SPITZER,

                              Respondents.
-----------------------------------------------------------------

**APPEARANCES:**                             **OF COUNSEL:**

GREGORY L. JACKSON
Petitioner Pro Se
No. 00-B-0720
Franklin Correctional Facility
62 Bare Hill Road
Post Office Box 10
Malone, New York 12953

HON. ANDREW M. CUOMO                LUKE MARTLAND, ESQ.
Attorney General for the State             Assistant Attorney General
   of New York
120 Broadway
New York, New York 10271

**DAVID R. HOMER**
**U.S. MAGISTRATE JUDGE**

### REPORT-RECOMMENDATION AND ORDER[1]

      Petitioner pro se Gregory L. Jackson ("Jackson") is currently an inmate in the custody

of the New York State Department of Correctional Services ("DOCS") at Franklin Correctional

Facility. Jackson was found guilty on March 31, 2000 of one count each of criminal possession

of stolen property, unauthorized use of a motor vehicle, burglary, and petit larceny after a jury

---

[1] This matter was referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.4.

trial in Tompkins County and is presently serving a determinate term of eight and one-half years imprisonment. Jackson now seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254 on the grounds that (1) he was denied the effective assistance of both trial and appellate counsel, (2) a pre-trial identification procedure was unduly suggestive, (3) the trial court's jury charge was inadequate, and (4) there was insufficient evidence to support his conviction. For the reasons which follow, it is recommended that the amended petition be denied.

## I. Background

In September 1999, several college students' apartments were burglarized in the City of Ithaca and a 1999 Jeep Wrangler of another student, Oscar Avila, was stolen. T. 121-23, 247-48, 268.[2] On the morning of September 28, 1999, the residence of Jennifer Yanacek, Amy Goldstein, Lauren Klem, Marlene Wolf, and Jennifer Hirshbeck was burglarized. T. 59-61, 91-95. Yanacek was awakened by the sound of someone opening the refrigerator door outside her bedroom. T. 61-62. The individual then opened Yanacek's bedroom door and stood in the doorway for about a minute. T. 62-64. Yanacek later identified the individual as Jackson. WH. 11-12.[3]

The following day, the police received an anonymous tip that Jackson was in possession of Avila's Jeep. T. 213-14. Officer Pagliaro was assigned to observe the vehicle and noticed

---

[2] "T." followed by a number refers to the pages of the trial transcript included with respondents' answer. Docket No. 36.

[3] "WH." followed by a number refers to the pages of the Wade hearing transcript included with respondents' answer. See Docket No. 36; see also United States v. Wade, 388 U.S. 218 (1967) (holding that a trial court may conduct a pretrial hearing to determine the admissibility of identification testimony).

Jackson exiting his apartment, getting into the stolen Jeep, and driving away. T. 202-03. Shortly thereafter, Pagliaro stopped the vehicle and arrested Jackson. T. 203-04. Jackson initially indicated that he did not steal the Jeep, claiming to have purchased it. T. 218. Jackson then stated that he paid some "white dude fifty bucks to use it" for a couple of weeks. T. 218, 234. The police then obtained a search warrant for Jackson's residence and discovered stolen merchandise from the recent burglaries. T. 301.

Jackson was arrested, indicted, convicted, and sentenced as indicated above. T. 499-500; ST. 8-9.[4] On April 12, 2001, the Appellate Division unanimously affirmed the conviction and sentence. People v. Jackson, 725 N.Y.S.2d 406, 409 (3d Dep't 2001). Application for leave to appeal to the New York Court of Appeals was denied on July 2, 2001. People v. Jackson, 756 N.E.2d 88 (N.Y. 2001). Jackson also filed two separate motions to vacate his sentence, but both were denied. See Docket No. 36. This action followed.

## II. Discussion[5]

### A. Brady Violation

Jackson contends that the prosecutor's failure to disclose the videotape statement of

---

[4] "ST." followed by a number refers to the pages of the transcript of Jackson's sentencing included with respondents' answer. Docket No. 36.

[5] Respondents contend that Jackson failed to exhaust his claims that the failure of the trial court to record the voir dire proceedings deprived him of his constitutional rights and that the reasonable doubt instruction to the jury was improper. See Respondents' Mem. of Law (Docket No. 37) at 22-24. However, Jackson's contentions here are denied on the merits and, thus, this Court need not reach the question of whether the claims were properly exhausted. See subsection (II)(B)(2)&(F)(1) infra.

Larry Harden constituted a Brady/Rosario[6] violation.

A prosecutor is required to disclose exculpatory and impeachment evidence to the defense when this evidence is material to the question of guilt or punishment. Brady v. Maryland, 373 U.S. 83, 85-87 (1963). The evidence is material if there is a reasonable probability that its disclosure would have led to a different result. United States v. Payne, 63 F.3d 1200, 1209 (2d Cir. 1995) (citations omitted). Brady material includes evidence which may help a defendant impeach a key witness. Tankleff v. Senkowski, 135 F.3d 235, 250 (2d Cir. 1998) (citing United States v. Bagley, 473 U.S. 667, 676 (1985)). Impeachment evidence is material when it relates to a witness who supplied the only evidence linking the defendant to the crime or is likely to impact the credibility of a witness who established a critical element of the prosecution's case. United States v. Wong, 78 F.3d 73, 79 (2d Cir. 1996).

Here, the prosecutor indicated that he viewed the Harden police interview videotape and concluded that it was not Brady material. T. 493. Jackson contends that the videotape was useful for impeachment purposes and "contains likely exculpatory evidence which explains why the People did not call Harden to testify." Docket No. 21, Addendum at 1. However, Jackson has failed to demonstrate how Harden's videotape would have led to a different result, instead stating in conclusory terms that the videotape "likely" contained exculpatory evidence. Thus, Jackson's contention that the prosecutor's failure to disclose Harden's videotaped statement constituted a Brady violation is without merit.

---

[6] See People v. Rosario, 173 N.E.2d 881 (N.Y. 1961) (holding that a prosecutor's failure to disclose a prior statement of a witness to be called at trial constitutes per se error requiring a new trial). To the extent that Jackson is asserting a claim under Rosario, such a claim is premised on state law and affords no basis for federal habeas relief. See Manning v. Fischer, No. Civ. 06-2052 (NRB), 2006 WL 3408575, at *8 (S.D.N.Y. Nov. 22, 2006).

Therefore, the amended petition on this ground should be denied.

## B. Ineffective Assistance of Counsel

Jackson contends that he was deprived the effective assistance of counsel because his trial counsel had no criminal law experience and failed to (a) file necessary pre-trial motions, (b) preserve Brady/Rosario violation objections, (c) seek a severance of counts improperly joined in a single indictment, (d) call witnesses for the defense, (e) present a defense, (f) request a hearing regarding the prosecution's tainted eyewitness testimony, (g) move to suppress his uncharged crimes and alleged statements, and (h) object to the prosecution's use of false testimony to secure his conviction. Jackson also contends that he was deprived of the effective assistance of appellate counsel because his appellate counsel failed to raise a "number of meritorious issues," including ineffective assistance of trial counsel, per se Brady/Rosario violations by the prosecution, failure to record the voir dire proceedings, and Jackson's violent offender status. Docket No. 21 at 6. Respondents contend that Jackson received effective assistance from both trial and appellate counsel.

A defendant arguing ineffective assistance of counsel must show that counsel was not functioning as counsel guaranteed by the Sixth Amendment. Counsel's performance must have been deficient and that deficient performance must have prejudiced the defense. Once this is shown, it cannot be said that the result of the proceeding is reliable. United States v. DeJesus, 219 F.3d 117, 121 (2d Cir. 2000) (citing Strickland v. Washington, 466 U.S. 668, 687 (1984)). A defendant must demonstrate that counsel's errors were so serious that the defendant was deprived of a fair trial and that there was a reasonable

-5-

probability that, but for counsel's unprofessional errors, the results of the proceeding would have been different. Strickland, 466 U.S. at 686.

The proper measure of attorney performance is an objective standard of reasonableness in the totality of the circumstances under prevailing professional norms. Id. at 688; Purdy v. United States, 208 F.3d 41, 44 (2d Cir. 2000). Strategic choices made after investigation of the relevant law and facts are normally not subject to challenge and the reviewing court must be "highly deferential" to counsel's performance. Strickland, 466 U.S. at 688. Additionally, state court findings on such matters are conclusive on the court reviewing the habeas petition if supported in the record. 28 U.S.C. § 2254(d); Summer v. Mata, 455 U.S. 591, 592 (1982).

### 1. Trial Counsel[7]

Jackson contends that his trial counsel failed to file various pre-trial motions or object to misconduct by the prosecutor. However, a review of the record indicates that Jackson's trial counsel properly represented him in all respects. Counsel made the proper objections, filed the proper motions, and vigorously cross-examined the prosecution's witnesses. Further, Jackson fails to demonstrate that he was prejudiced by any of the alleged ineffective assistance or that the result of the trial could not be relied upon. Moreover, in a decision dated June 18, 2001, the Tompkins County Supreme Court found that Jackson received "meaningful representation from his attorney." Docket No. 36.

---

[7] Respondents contend that various ineffective assistance of counsel claims by Jackson are procedurally barred. See Respondents' Mem. of Law at 57-60. However, Jackson's claims here are without merit and, thus, there is no need to address whether the claims are procedurally barred. See subsection (II)(B)(1) infra.

Jackson also contends that his trial counsel failed to seek severance of improperly joined counts, call witnesses, and present a defense. However, these contentions concern trial strategy, which may not be second-guessed on habeas review. See United States v. Helgesen, 669 F.2d 69, 72 (2d Cir. 1982) (discussing the Second Circuit's "reluctance to second-guess matters of trial strategy simply because the chosen strategy has failed"); see also United States v. Best, 219 F.3d 192, (2d Cir. 2000) ("[C]ounsel's decision as to 'whether to call specific witnesses – even ones that might offer exculpatory evidence – is ordinarily not viewed as a lapse in professional representation'") (citations omitted)).

With respect to Jackson's contention that his trial counsel failed to object to a Brady/Rosario violation, this claim is without merit. Jackson appears to be referring to the failure of the prosecution to disclose the police videotape statement of Harden. At the close of trial, Jackson's counsel noted that the prosecution had not provided the defense with the videotape of Harden. T. 493. The prosecutor stated that he had reviewed the videotape and did not consider it Brady material. T. 493. The trial judge noted that defense counsel made "sufficient objection" regarding this request. T. 493. Thus, the record is clear that Jackson's counsel did in fact object to the prosecution's failure to disclose Harden's videotape statement.

Therefore, the amended petition on this ground should be denied.

### 2. Appellate Counsel

Jackson also contends that he received ineffective assistance of appellate counsel because appellate counsel failed to raise a number of "meritorious issues."

To establish ineffective assistance of appellate counsel, a petitioner must

demonstrate that (i) appellate counsel's performance fell below an objective standard of professional reasonableness, and (ii) but for appellate counsel's "unprofessional errors," the results of the proceedings would have been different, i.e., such error caused prejudice to the petitioner. Smith v. Robbins, 528 U.S. 259, 285-86 (2000); Strickland, 466 U.S. at 688, 694. When challenging the effectiveness of appellate counsel, a petitioner must show that counsel "omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker." Clark v. Stinson, 214 F.3d 315, 322 (2d Cir. 2000) (citation omitted). A petitioner asserting constitutionally deficient performance must show more than counsel's failure to raise a non-frivolous argument, as counsel is required to use professional judgment when deciding to concentrate on a few key issues while eliminating weaker arguments. Jones v. Barnes, 463 U.S. 745, 751-52 (1983); Sellan v. Kuhlman, 261 F.3d 303, 317 (2d Cir. 2001). Moreover, the Sixth Amendment does not require that all colorable state law arguments be raised on direct appeal. Sellan, 262 F.3d at 310.

Here, Jackson contends that his appellate counsel failed to raise the following issues: ineffective assistance of trial counsel, per se Brady/Rosario violations by the prosecutor, failure to record the voir dire proceedings, and Jackson's violent offender status. As discussed above, Jackson's claims with regard to ineffective assistance of trial counsel and the failure to raise per se Brady/Rosario violations are meritless, and appellate counsel was not constitutionally ineffective for not raising these arguments. See Torres v. McGrath, 407 F. Supp. 2d 551, 562 (S.D.N.Y. 2006) ("'[f]ailure to make a meritless argument does not amount to ineffective assistance'") (quoting United States v. Arena, 180 F.3d 380, 396 (2d Cir. 1999)). Regarding Jackson's contentions that his appellate counsel's failure to raise his status as a violent offender on appeal, Jackson fails to demonstrate that the outcome of his

sentencing would have been different – i.e., that his sentence was unlawful.  Finally, Jackson fails to allege any prejudice as a result of the voir dire proceedings not being recorded.  In fact, although the proceedings were not recorded in their entirety, the questions from the trial judge were recorded.  See T. 23-33.

Therefore, the amended petition on this ground should be denied.

### C. Identification Procedure

During the investigation, police showed Yanacek two arrays of photographs, including that of Jackson in the second array.  Yanacek selected Jackson's from the second array as the photograph of the person she observed in her apartment on September 28, 1999.  Jackson contends that this identification procedure was unduly suggestive and against the weight of th evidence.[8]

Federal habeas courts review state court evidentiary decisions only for consistency with due process.  See Patterson v. New York, 432 U.S. 197, 201-02 (1977); see also Rosario v. Kuhlman, 839 F.2d 918, 924 (2d Cir. 1988).  State court evidentiary rulings do not rise to the level of due process violations unless they offend "some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." Patterson, 432 U.S. at 202 (citations omitted).  Jackson must show that the allegedly improperly admitted evidence was "sufficiently material to provide the basis for conviction or to remove a reasonable doubt that would have existed on the record without it."  Dunnigan

---

[8] Jackson also contends that the prosecution improperly referenced the photographic array at trial in an attempt to bolster the identification testimony of the prosecutor's eyewitness.  However, this argument will be addressed subsection II(E) infra.

v. Keane, 137 F.3d 117, 125 (2d Cir. 1998) (internal quotation marks omitted) (citations omitted)). To determine materiality, a reviewing court must look at the evidence in light of the entire record before the jury. Id.

The trial court held that the identification testimony was not unduly suggestive, finding that "[t]here was nothing suggestive in the way the viewing was conducted by the police." RA. 1.[9] The Appellate Division sustained the trial court's holding, stating that "[o]ur examination of the photo array from which Yanecek chose defendant reveals no hint of inappropriate suggestiveness." Jackson, 725 N.Y.S.2d at 408. Yanacek's testimony directly connected Jackson to the crime scene and, thus, was material, provided a basis for conviction, and removed a reasonable doubt. Therefore, the trial court's ruling is reviewable. However, the evidentiary decision did not rise to the level of a due process violation.

An eyewitness identification is inadmissible if the pretrial photographic array was unduly suggestive and raised "a very substantial likelihood of irreparable misidentification." Manson v. Brathwaite, 432 U.S. 98, 106-07 (1977). If there was undue suggestiveness in the pretrial photographic array, an in-court identification at trial may still be admissible if there is an independent basis for reliability. Raheem v. Kelly, 257 F.3d 122, 135 (2d Cir. 2001). To evaluate whether the in-court identification was independently reliable, the reviewing court must consider five factors:

> the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty

---

[9] "RA." followed by a number refers to the pages of the people's record on appeal included with respondent's answer. Docket No. 36.

-10-

> demonstrated by the witness at the confrontation, and the length
> of time between the crime and the confrontation.

Neil v. Biggers, 409 U.S. 188, 199-200 (1972); see also Raheem, 257 F.3d at 135.

On the day of the burglary, Yanacek met with Investigator Gray to review a photographic array of potential suspects. WH. 4-5. Gray prepared a photographic array based on Yanacek's description of the intruder as a black male with dark skin and full lips in his late teens or early twenties wearing a tan colored Nike baseball cap and a plaid shirt that may have had blue and tan checks. WH. 26-27. The first array did not contain Jackson's photograph. WH. 11. After reviewing the array for "no more than a minute or two," Yanacek was unable to identify any of the individuals in the photographs as the intruder she saw earlier that day. WH. 7-8.

The next day, Gray learned of Jackson's arrest for possession of the stolen Jeep. WH. 10-11. Gray then proceeded to assemble a second photographic array that included Jackson's photograph, which was labeled number five. WH. 11-12. The second array included three new photographs but also contained two pictures from the previous array that were placed in different positions. WH. 10. After viewing the array for "less that thirty seconds," Yanacek indicated that she recognized number five, Jackson's photograph, as that of the intruder who entered her apartment. WH. 11-12. As discussed above, neither the County Court nor the Appellate Division found the second array to be unduly suggestive. Further, Jackson has failed to demonstrate that the second array rose to the level of a due process violation. Thus, there is no evidence that the presentation of the second array was unduly suggestive.

Therefore, the amended petition on this ground should be denied.[10]

### D.  Insufficiency of Evidence

Jackson contends that the evidence supporting his conviction for unauthorized use and criminal possession of the stolen Jeep was legally insufficient.

A defendant who claims that the evidence was not sufficient to sustain a conviction bears a very heavy burden.  United States v. Pierce, 224 F.3d 158, 164 (2d Cir. 2000).  The Second Circuit has maintained that the weight of the evidence and the credibility of the witnesses are determinations for the jury and are not grounds for reversal.  See United States v. Vasquez, 267 F.3d 79, 91 (2d Cir. 2001).  "[T]he critical inquiry on review of the sufficiency of the evidence . . . [is] to determine whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt."  Jackson v. Virginia, 443 U.S. 307, 318 (1979).  This inquiry asks a court to determine if, "after viewing the evidence in the light most favorable to the prosecution, . . . any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  Id. at 319; see also Fama v. Comm'r of Corr. Servs., 235 F.3d 804, 811 (2d Cir. 2000).

Here, Jackson contends that the evidence produced at trial was insufficient to sustain his conviction for unauthorized use and criminal possession of the stolen Jeep.  Avila, the Jeep's owner, testified that the Jeep was stolen on the morning of September 28, 1999.  T.

---

[10] Jackson also contends that the identification evidence was against the weight of the evidence.  However, "'assessments of the weight of the evidence or the credibility of witnesses are for the jury and not grounds for reversal on [habeas] appeal.'" Garrett v. Perlman, 438 F. Supp. 2d 467, 470 (S.D.N.Y. 2006) (quoting Maldonado v. Scully, 86 F.3d 32, 35 (2d Cir. 1996)).  Thus, Jackson's claim as to the weight of the evidence is not reviewable in habeas proceedings.

121-22. The next day, Officer Pagliaro observed Jackson exiting his apartment, getting into the stolen Jeep, and driving away. T. 202-03. Shortly thereafter, Pagliaro stopped the vehicle and arrested Jackson. T. 203-04. Jackson initially claimed to have purchased the Jeep. T. 218. Jackson then claimed that he paid some "white dude fifty bucks to use it" for a couple of weeks. T. 218, 234. However, at no time did Avila give Jackson permission to take, possess, or use the Jeep. T. 126. Further, the Appellate Division considered and rejected the arguments Jackson raises here. See Jackson, 725 N.Y.S.2d at 409. Therefore, the record demonstrates both that the evidence supporting his conviction for unauthorized use and criminal possession of the stolen Jeep was sufficient and that the state court's rejection of Jackson's contention was not objectively unreasonable. Lockyer v. Andrade, 538 U.S. 63, 75 (2003).

Therefore, the amended petition on this ground should be denied.

### E. Prosecutorial Misconduct

Jackson contends that during his closing argument, the prosecutor improperly "bolstered the identification testimony and commented on fingerprint evidence and dismissed counts." Docket No. 21 at 6.

The Due Process Clause of the Fourteenth Amendment guarantees defendants the right to a fair trial. U.S. Const. Amend. XIV, §1. Prosecutorial misconduct violates this due process right when the misconduct alleged is so severe and is of sufficient significance to infect the trial resulting in the denial of the defendant's right to a fair trial. Greer v. Miller, 483 U.S. 756, 765 (1987); Blissett v. Lefevre, 924 F.2d 434, 440 (2d Cir. 1991). In evaluating a claim of prosecutorial misconduct, the alleged misconduct must be placed into

context and the court should consider the severity of the alleged misconduct, the curative measures taken, and the likelihood of conviction absent any misconduct. Blissett, 924 F.2d at 440. The court should then determine if the petitioner has shown actual prejudice in light of the totality of the circumstances surrounding the trial court conviction. Samuels v. Mann, 13 F.3d 522, 526-27 (2d Cir. 1993).

Here, Jackson contends that the prosecutor bolstered the identification testimony of his witnesses and discussed fingerprint evidence and the dismissed counts during his summation. A review of the prosecutor's conduct during the trial shows that there was no conduct that was so severe as to deprive Jackson of a fair trial. In addition, absent the alleged misconduct, it is likely that Jackson would nevertheless have been convicted based on the evidence presented at trial. Further, the Appellate Division considered and rejected Jackson's arguments that the prosecution committed misconduct, concluding "that [Jackson] . . . failed to demonstrate substantial prejudice arising to a denial of due process." Jackson, 725 N.Y.S.2d at 409.

Therefore, the amended petition on this ground should be denied.

### F. Jury Instructions
### 1. Jury Charge

Jackson contends that the trial court's jury instructions were insufficient as to reasonable doubt and burden of proof, circumstantial evidence, moral certainty, identification, presumption of knowledge and unauthorized use of a motor vehicle, and recent exclusive possession of stolen property. Jackson also contends that the trial court

erred when it failed to give a missing witness charge.

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. 104-132, 110 Stat. 1214, restricts review of habeas petitions. In order for a petitioner to be granted relief under the AEDPA, it is necessary to show that a claim adjudicated on the merits by a state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); Aparicio v. Artuz, 269 F.3d 78, 93 (2d Cir. 2001). Errors in state jury charges are questions of state law and therefore not reviewable on federal habeas corpus absent a showing that the jury charge deprived the defendant of a federal constitutional right. See Blazic v. Henderson, 900 F.2d 534, 540 (2d Cir. 1990); Valtin v. Hollins, 248 F. Supp. 2d 311, 316 (S.D.N.Y. 2003). The standard of review for state trial jury instructions in a habeas petition is not whether the "instruction is undesirable, erroneous or even 'universally condemned'" but whether "the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." Wright v. Smith, 569 F.2d 1188, 1191 (2d Cir. 1978) (quoting Cupp v. Naughten, 414 U.S. 141, 146-47 (1970)).

Regarding the trial court's reasonable doubt and burden of proof charges, the Appellate Division stated that no particular wording has been mandated for these particular instructions. See Jackson, 725 N.Y.S.2d at 408. Further, the court held that the trial court's instruction "that in order to convict, [the jury] must find proof which leaves it 'firmly convinced' of [Jackson's] guilt . . . has not been found to have diminished the jury's obligation to find guilt beyond a reasonable doubt." Id. There appears no error in the trial court's instruction here.

With respect to the trial court's circumstantial evidence instructions and its failure to

-15-

include the words "moral certainty," the Appellate Division found the charge without error and thus rejected Jackson's contention that the charge was insufficient. Id. The Court also rejected Jackson's argument that the identification charge should have been "expanded," finding that contrary to Jackson's assertion, the County Court "had provided the jury with an expanded identification charge despite the fact that identification testimony was not the only evidence connecting this defendant to the crimes charged." Id. There was no error in the instruction here.

Finally, Jackson contends that the trial court erred when it failed to give the jury a missing witness charge. Jackson's trial counsel requested a missing witness charge, but the trial judge determined that the witness in question was not under the prosecution's control and a missing witness charge was not appropriate. See T. 433-36. "Whether a missing witness charge should be given lies in the sound discretion of the trial court." United States v. Torres, 845 F.2d 1165, 1170-71 (2d Cir.1988) (citations omitted); see also Morales v. Strack, No. Civ. 99-1617(JBW), 2003 WL 21816963, at *4 (E.D.N.Y. July 3, 2003) (citations omitted). Further, the Appellate Division's denial of Jackson's missing witness argument on his direct appeal was not "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Thus, Jackson has failed to demonstrate that the trial court's jury instructions deprived him of a federal constitutional right. See Blazic, 900 F.2d at 540.

Therefore, the amended petition on this ground should be denied.[11]

---

[11] As to Jackson's remaining contentions regarding the trial court's jury instructions on presumption of knowledge, unauthorized use of a motor vehicle, and recent exclusive

## 2. Jury Questions

Jackson contends that the trial court erred when ruling on the jury's request for identification evidence.

During deliberations, the jury submitted a note to the court requesting "Yanacek's testimony . . . Gray's testimony . . . [and] any other evidence regarding Yanacek's identification of the Defendant." T. 494. Jackson's counsel requested that the jury be given the arrest report because it could be used to compare Yanacek's testimony with the identifying information in the arrest report. T. 494-95. The trial judge found that the arrest report had nothing to do with any identification testimony or statement by Yanacek and denied the request. T. 495-96. After the jury was brought back into the courtroom, the trial judge indicated that he was not aware of any further testimonial evidence regarding the identification but advised the jury that all of the non-testimonial evidence was available upon request. T. 496-97. The jury did not make any subsequent requests for identification evidence and the entirety of Yanacek's and Gray's testimony was read back. T. 497.

Although the Appellate Division did not specifically address Jackson's contention, it appears that the court rejected his claim when it concluded that Jackson's "remaining contentions have been examined and found to be without merit." Jackson, 725 N.Y.S.2d at 409. Further, "[t]he determination of the appropriate answer to a jury question rests within the discretion of the trial court, so long as the answer does not deprive the defendant of a

---

possession of stolen property, the Appellate Division determined that "[u]pon our scrutiny of the balance of the court's charge, we find no merit to any of defendant's remaining ascriptions of error." Jackson, 725 N.Y.S.2d at 408. Further, Jackson fails to demonstrate how the trial court's instructions here deprived him of a federal constitutional right. Thus, these claims are without merit.

-17-

constitutional right." Ortiz v. Artuz, 113 F. Supp. 2d 327, 339 (E.D.N.Y. 2000) (citing McShall v. Henderson, 526 F. Supp. 158, 161 (S.D.N.Y. 1981)).  Here, Jackson has failed to demonstrate that the trial judge's response to the jurors' request deprived him of a constitutional right.

Therefore, the amended petition on this ground should be denied.

### III. Conclusion[12]

For the reasons stated above, it is hereby

**RECOMMENDED** that the petition for a writ of habeas corpus be **DENIED**.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW**.  Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993); Small v. Sec'y of HHS, 892 F.2d 15 (2d Cir. 1989); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

**IT IS SO ORDERED.**

Dated: January 3, 2007
      Albany, New York

_David R. Homer_
United States Magistrate Judge

---

[12] Jackson also contends that New York's ineffective assistance of counsel standard, as articulated in People v. Baldi, 429 N.E.2d 400, 405 (N.Y. 1981), falls below the federal Strickland standard. See Docket No. 21, Addendum at 1.  Although the Second Circuit has questioned whether the New York Court of Appeals ineffective assistance of counsel standard is "contrary to" Strickland, that court has not explicitly held that New York's standard is deficient. See Henry v. Poole, 409 F.3d 48, 68-72 (2d Cir. 2005); see also Henry, 409 F.3d at 72-73 (Sack, J., concurring).  Further, as discussed above, Jackson has failed to demonstrate that he received ineffective assistance of counsel.  Thus, Jackson's claim is without merit.